**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


**RAY ANTHONY MALONE,**

   **Plaintiff,**

             **Civil Action 2:11-cv-00319**
**vs.**            **Judge Michael H. Watson**
             **Magistrate Judge E.A. Preston Deavers**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

   **Defendant.**

## REPORT AND RECOMMENDATION

## I.  INTRODUCTION

Plaintiff, Ray Anthony Malone, who is proceeding *pro se*, brings this action pursuant to

42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance benefits.  In his application,

Plaintiff alleges that he has been disabled since December 1, 2004, due to various conditions

including diabetes, hypertension, and chronic knee pain.  (R. at 107–19, 135.)  Plaintiff's

disability claim was denied initially on February 21, 2007 and again upon reconsideration on

May 29, 2007.  (R. at 73–75, 77–79.)

Plaintiff received a hearing before Administrative Law Judge ("ALJ") Henry B. Wansker

on July 9, 2009.  Plaintiff, who at that time was represented by counsel, appeared and testified.

(R. at 7–56.)  A vocational expert also testified at the hearing.  (*Id.*)  On July 21, 2009, the ALJ

issued an unfavorable decision denying benefits.  ( R. at 59–70.)  This decision became the final

decision of the Commissioner when the Appeals Council denied review on March 2, 2011.  ( R.

at 1–5.)

Plaintiff thereafter timely commenced this civil action. Although at times unclear, Plaintiff generally contends in his Statement of Errors that the ALJ erred by failing to consider evidence concerning matters that occurred after June 30, 2006, Plaintiffs' date last insured.[1] Additionally, Plaintiff appears to maintain that the ALJ erred in relying on the testimony of the vocational expert. Finally, Plaintiff seeks to admit new medical evidence from after the ALJ's July 2009 decision. Following the Commissioner's Memorandum in Opposition, and Plaintiff's Reply, the matter is now ripe for decision.[2] For the following reasons, it is **RECOMMENDED** that the Court **AFFIRM** the decision of the Commissioner.

## II. PLAINTIFF'S TESTIMONY

Plaintiff, who was forty seven years old at the time of the administrative hearing, has a high school education. (R. at 19–20.) He has past relevant work as a truck driver for the post office. (R. at 30.) At the time of the hearing, Plaintiff was 5'9" and weighed approximately 260 pounds. (R. at 20.)

At the administrative hearing, Plaintiff testified that he stopped working in 2004 in part due to swelling in his legs and also to help care for his son.[3] (R. at 20–21, 23.) Plaintiff indicated that at the time he also suffered from diabetes, problems with his blood pressure and cholesterol, and knee pain. (R. at 27–28.) Plaintiff stated that his leg pain, which began as early

---

[1] Plaintiff filed his initial Assignment of Errors on October 11, 2011 and supplemented this filing on November 18, 2011.

[2] Without seeking leave from the Court to file materials out of time, Plaintiff submitted additional attachments to Plaintiff's Assignments of Error on May 25, 2012. Regardless, these new materials do not influence the undersigned's analysis.

[3] Plaintiff's son has cerebral palsy. (R. at 21.)

as 1982, caused him trouble sleeping. (R. at 24–25, 36.) Plaintiff described that he would experience numbness in his calves and feet. (R. at 34.) He estimated that as of 2004, while on medication, his knee pain was about a five on a ten point scale. (R. at 34.) Plaintiff testified that his legs would lock up in the morning and occasionally at other times during the day. (R. at 42–43.) Plaintiff indicated that he did not have problems with his upper body at the time he stopped working. (R. at 29.)

Plaintiff stated that during the time of his alleged onset date he would typically get up in the morning, after having trouble sleeping, and attempt to loosen his legs and joints. (R. at 24.) After giving his legs time to loosen up, Plaintiff would go downstairs and make himself breakfast. (*Id.*) Plaintiff testified that he was not doing physical activity during this time frame and would spend his days sleeping and watching television. (R. at 26.) Plaintiff did apply for work as a truck driver following his alleged onset date, but was unable to pass a physical examination. (R. at 26–27.)

Plaintiff estimated that, when he stopped working in 2004, he would be able to sit for approximately forty-five minutes at a time and for about two hours total in a workday. (R. at 29, 39.) He stated that he would be able to stand in one spot for fifteen minutes to a half an hour at a time and for a total of two hours in a workday. (*Id.*) Plaintiff testified that he would have been able to lift about fifty pounds altogether and ten to fifteen pounds frequently. (R. at 47.)

Although Plaintiff's testimony focused on the period after he stopped working, Plaintiff also noted that he was involved in a motorcycle accident in 2008. (R. at 41.) The accident occurred when Plaintiff's knees locked up while riding. (*Id.*) Plaintiff suffered serious injuries to his arms, spine, and skull. (R. at 42.)

### III. MEDICAL RECORDS

Plaintiffs medical records reveal minimal treatment history during 2003 and 2004. (R. at 229–36.) In February 2003, Plaintiff saw a dietician who noted that he was obese and had type two diabetes. (R. at 235.) At this time, Plaintiff reported that he had stopped taking his diabetes medication because he found his diabetes to be better controlled as long as he avoided certain coffee beverages. (*Id.*) The dietician recommended a meal pattern, including measuring foods, to promote weight loss and better control Plaintiff's diabetes. (*Id.*) On April 10, 2003, Plaintiff visited Arvind Kumar, MD, seeking erectile dysfunction medication and a refill on diabetes medication. (R. at 231.) Dr. Kumar noted that Plaintiff was obese and in poor compliance as to his diabetes. (*Id.*) Dr. Kumar diagnosed Plaintiff with diabetes mellitus and hyperlipedemia. (*Id.*) Dr. Kumar advised Plaintiff that he needed to control his diabetes and lose weight. (*Id.*) Plaintiff's records also reflect that he received treatment for a wrist and thumb injury in March 2004. (R. at 229.)

Plaintiff's medical records from July 2006 reflect that he had stopped taking medication and had not sought treatment from Veterans Affairs since 2004. (R. at 229.) David Garling, MD, saw Plaintiff in July 2006 to evaluate Plaintiff's complaints of knee pain. (R. at 227.) Plaintiff told Dr. Garland that he was discharged from his job as a truck driver because he was calling off work too frequently due to his knee pain. (R. at 228.) Plaintiff further stated that when he was working his knee pain would increase if he had to stand on hard surfaces for longer than forty-five minutes. (*Id.*) Dr. Garling noted that Plaintiff's gait was normal and that Plaintiff had mild tenderness on palpation of the medial aspect of each knee. (*Id.*) Plaintiff reported flair-ups, with increased pain and stiffness that occurred about five times per month. (*Id.*) X-rays

revealed minimal to mild osteoarthritis of the knees.  (R. at 199, 228.)  Dr. Garling diagnosed patellofemoral pain syndrome of the right and left knees and noted that, from Plaintiff's history, there were indications Plaintiff should be limited to walking five minutes at a time.  (R. at 228–29.)

Plaintiff saw Sachidanadan Kanoor, MD, in November 2006 to re-enroll with Veteran Affairs for medical care.  (R. at 219–24.)  Dr. Kanoor noted that Plaintiff had been to Veterans Affairs in 2003 for conditions including hypertension and diabetes, but had since stopped taking medications for these conditions.  (*Id.*)  Dr. Kanoor diagnosed Plaintiff with hypertension, diabetes mellitus, hyperlipidemia, degenerative joint disease of the knees, and insomnia.  (R. at 221.)  Dr. Kanoor prescribed Plaintiff various medications.  (*Id.*)

Plaintiff continued to receive treatment for these conditions through July 2008.  (R. at 358–79.)  In January 2007, Plaintiff was fitted for knee braces.  (R. at 501.)  On June 14, 2007, Plaintiff saw Dr. Kanoor for follow-up and examination.  (R. at 378–79.)  Plaintiff complained of pain in his knees but indicated that he did not want narcotic medication for the pain.  (R. at 378.)  Dr. Kanoor adjusted medications for Plaintiff's conditions at this time.  (*Id.*)  In February 2008, Plaintiff complained of aching and numbness in his arms as legs as well as pain in his hands.  (R. at 370, 372–73.)  Dr. Kanoor noted the possibility of neuropathy.  (R. at 370.)  During this examination, Dr. Kanoor stressed the importance of regular exercise and physical activity in controlling Plaintiff's blood pressure and recommended thirty minutes of exercise at three times per week if possible.  (R. at 370.)

Again, in July 2008, Plaintiff was in a severe motorcycle accident.  (*See* R. at 255.)  Plaintiff experienced several injuries as a result of this accident including a concussion, blunt

chest injury, facial fractures, and reflex sympathetic dystrophy of the left arm. (R. at 248, 465.)

In October 2008, a cervical spine MRI revealed degenerative disc disease with advanced chronic

degenerative changes at C5-C6 and C6-C7. (R. at 314.) Following Plaintiff's motorcycle

accident, various physicians, including Dr. Kanoor, gave opinions indicating that Plaintiff was

no longer capable of being a truck driver, and incapable of other work. (*See, e.g.*, R. at 241, 319,

482.)

Finally, attached to his briefing, Plaintiff provides letters from Andrew Su, M.D. and

Robert J. Buell. (*See* ECF No. 12-1 at 2–3.) Dr. Su's letter confirms Plaintiff's diagnoses. Dr.

Buell's letter indicates that the combination of Plaintiff's impairments make it impossible for

him to maintain employment. Both physicians wrote these letters after the ALJ's July 21, 2009

decision.

## IV. EXPERT TESTIMONY

Richard P. Oestreich, Ph.D., testified as a vocational expert at the July 9, 2009

administrative hearing. Dr. Oestreich described Plaintiff's past relevant work as delivery vehicle

operator. (R. at 50.) Dr. Oestreich classified such work as medium exertion and semiskilled.

(*Id.*)

The ALJ asked Dr. Oestreich to consider a hypothetical person with the same general

characteristics as Plaintiff who could occasionally lift twenty-five pounds; frequently lift fifteen

pounds; stand and walk for thirty minutes at a time for two hours in a workday; sit for forty-five

minutes at a time for six hours in a workday; who could only occasionally push and pull with his

lower extremities; and who would be limited to simple routine repetitive tasks, low stress in

nature, and involving no production quotas. (R. at 51–52.) Dr. Oestreich opined that such a

person would be capable of some sedentary work.  (R. at 52.)  Dr. Oestreich estimated that

approximately 5,000 jobs existed in central Ohio that Plaintiff could perform.  He listed

examples such as assembler, with 200 jobs locally, 4,000 statewide, and 80,000 nationally; hand

packer, with 200 jobs locally, 4,000 statewide, and 80,000 nationally; and inspector, with 150

jobs locally, 3,000 statewide, and 60,000 nationally.  (R. at 53.)  Dr. Oestreich testified that his

conclusions were consistent with the Dictionary of Occupational Titles and that his data came

from the Bureau of Labor Statistics.  (*Id.*)

Counsel for Plaintiff asked Dr. Oestreich to consider a similar hypothetical except with

the limitation of only two hours of sitting in a workday.  (R. at 54.)  Dr. Oestreich indicated that

such a person would be unable to perform competitive work.  (R. at 54–55.)

### V.  ADMINISTRATIVE DECISION

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security

Act in his July 21, 2009 decision.  The ALJ concluded that Plaintiff's date last insured was June

30, 2006.  (R. at 62, 64.)  Accordingly, the ALJ required Plaintiff to establish disability on or

before this date in order to establish entitlement to disability benefits.

At the first step of the sequential evaluation process,[4] the ALJ found that Plaintiff had not

---

[4]  Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a
dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d
727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five
questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or
    equal the criteria of an impairment set forth in the Commissioner's Listing
    of Impairments, 20 C.F.R. Subpart P, Appendix 1?

engaged in substantial gainful activity since December 1, 2004, his alleged onset date. (R. at 64.)

Next, the ALJ determined that, through the date last insured, Plaintiff had the severe impairments of hypertension, diabetes mellitus, hyperlipidemia, degenerative joint disease of the knees, chronic pain, and obesity. (R. at 65.) At step three, the ALJ then found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. ( R. at 65.)

At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC"). The ALJ specifically concluded as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to lift, carry, push and/or pull 25 pounds occasionally and 15 pounds frequently; to stand and/or walk for up to 30 minutes at a time for a total of 2 hours in an eight-hour day and to sit for up to 45 minutes at a time for a total of 6 hours in an eight-hour day. He is able occasionally to perform non-repetitive pushing and pulling with the lower extremities within the foregoing weight limits. He can occasionally crouch, squat, crawl, kneel and climb ramps and stairs but is precluded from climbing ladders, ropes, or scaffolds. He is limited to simple routine repetitive tasks in a low stress environment, having no strict production requirements secondary to the effects of chronic pain.

(R. at 66.) In reaching this determination, the ALJ emphasized that the RFC essentially reflected Plaintiff's stated limitations with the exception of Plaintiff's claim that he could only sit for two hours total in an eight hour workday. (R. at 67.) The ALJ found that the medical evidence did

---

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

See 20 C.F.R. §404.1520(a)(4); see also Henley v. Astrue, 573 F.3d 263, 264 (6th Cir. 2009); Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001).

not support such a limitation.  (*Id.*)

Based on the above RFC, the ALJ found that Plaintiff could not perform his past relevant work. ( R. at 68.)  The ALJ determined, however, that Plaintiff could have performed a significant number of jobs in the national economy as of his date last insured.  (R. at 68.)  The ALJ relied on the testimony of Dr. Oestreich in reaching this conclusion.  (R. at 69.)  Accordingly, the ALJ determined Plaintiff was not disabled for the purpose of disability insurance benefits.  (R. at 69–70.)

## VI. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

9

evidence supports the [Commissioner's] decision, this Court defers to that finding 'even if there

is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).  Finally, even if the Commissioner's decision meets the substantial evidence standard,

"'a decision of the Commissioner will not be upheld where the SSA fails to follow its own

regulations and where that error prejudices a claimant on the merits or deprives the claimant of a

substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d

742, 746 (6th Cir. 2007)).

## VII. LEGAL ANALYSIS

Although at times difficult to decipher, Plaintiff generally organizes his Statements of

Error into two categories.[5]  First, Plaintiff contends that the ALJ erred in failing to account for

evidence after June 30, 2006, Plaintiff's date last insured.  Second, Plaintiff maintains that the

ALJ erred in relying on Dr. Oestreich's testimony.  Upon review, the undersigned finds both of

these contentions unavailing and also finds that substantial evidence supports the ALJ's decision.

Finally, the undersigned concludes the evidence Plaintiff submits from after the ALJ's July 21,

2009 decision does not justify a sentence six remand pursuant to 42 U.S.C. § 405(g).

### A.    Date Last Insured

Although Plaintiff's contentions sometimes lack clarity, he appears to challenge the time

---

[5]  Some of Plaintiffs contentions appear to deal with social security claims other than his disability insurance benefits application currently before this Court for review.  Because Plaintiff brings this case only for judicial review of the Commissioner's final decision on that application, the Court will not consider any other applications at this time.

frame the ALJ considered in evaluating his claim.[6]  Specifically, from Plaintiff's earnings record,

the ALJ determined that June 30, 2006 was Plaintiff's date last insured.  Accordingly, in

considering disability, the ALJ required Plaintiff to demonstrate disability between December 1,

2004 and June 30, 2006.

"To qualify for disability insurance benefits (SSD), a claimant must meet certain insured

status requirements . . . ." *Montgomery v. Astrue*, No. 3:11–cv–256, 2012 WL 1142871, at *1

(S.D. Ohio Apr. 4, 2012) (Report & Recommendation later adopted) (citing 42 U.S.C. § 423).  In

particular, to be considered insured in a given month for the purposes of disability insurance

benefits, an individual must generally have "not less than 20 quarters of coverage during the

40-quarter period which ends with the quarter in which such month occurred . . . ."  42 U.S.C.

§ 423(c)(1)(B)(I).  "If a claimant is no longer insured for disability insurance benefits at the time

she files her application, she is entitled to disability insurance benefits only if she was disabled

before the date she was last insured."  *Renfro v. Barnhart*, 30 F. App'x. 431, 435 (6th Cir. 2002).

Consequently, to be relevant to the disability decision, evidence related to a date after a claimant

was last insured "must relate back to the claimant's condition prior to the expiration of her date

last insured."  *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003).

---

[6]  Plaintiff also contends that the Social Security Administration failed to give him proper
notice of his date last insured throughout his disability claim.  Both initial and reconsideration
denials of Plaintiff's application at the administrative level, however, indicated to Plaintiff that
he was last eligible for disability benefits on June 30, 2006.  (R. at 73, 77.)  Furthermore, the
ALJ provided Plaintiff with a detailed description of why he had to establish disability prior to
June 30, 2006 at the hearing.  (*See* R. at 13–18.)  Plaintiff's counsel, who was also present at the
administrative hearing, had an opportunity to address the issue, but instead concurred with the
ALJ's finding.  (R. at 13.)  Under these circumstances the undersigned finds no reversible error,
or due process violation, in this regard.  *Cf. Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 620
(6th Cir. 2010) ("In the context of a social security hearing, due process requires that the
proceedings be full and fair.") (internal quotations omitted).

In this case, the undersigned concludes that the ALJ committed no error in evaluating, and considering evidence in light of, Plaintiff's date last insured. First, substantial evidence supports the ALJ's calculation of Plaintiff's date last insured. Plaintiff's earnings record demonstrates that after June 30, 2006 Plaintiff no longer had sufficient quarters of coverage to be considered insured for the purposes of disability insurance benefits. (*See* R. at 129–30.) Accordingly, as the ALJ outlined, Plaintiff had to establish disability on or before this date.

Second, the ALJ appropriately evaluated the evidence in light of Plaintiff's date last insured. A significant portion of Plaintiff's record consists of medical evidence following his July 2008 motorcycle accident. The evidence reflects that this accident resulted in several injuries and led multiple physicians to opine that Plaintiff was no longer able to work. Although the ALJ acknowledged Plaintiff's motorcycle accident in his July 2009 decision, he did not consider the accident and the resulting injuries in making his determination, as they occurred over two years after the date last insured. The undersigned agrees that the motorcycle accident and resulting injuries do not relate back for the purposes of assessing Plaintiff's condition between the alleged onset date and the date last insured. Accordingly, the ALJ did not err in focusing on the evidence relevant to Plaintiff's impairments prior to his date last insured.

B.     **Vocational Expert**

Plaintiff also suggests that the ALJ erred by relying on the testimony of Dr. Oestreich in concluding that Plaintiff could perform a significant number of jobs. Plaintiff challenges Dr. Oestreich's use of national figures in determining the amount of jobs available. Additionally, Plaintiff appears to contend that given the questions of his attorney, Dr. Oestreich's testimony indicated that he was unable to work.

12

A determination of disability requires a conclusion that a person cannot "engage in any []

kind of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work." 42 U.S.C. 423(d)(2)(A).

Furthermore, "'work which exists in the national economy' means work which exists in

significant numbers either in the region where such individual lives or in several regions of the

country." *Id.* In assessing the availability of work in the national economy, ALJs routinely

question and rely on vocational experts to determine what positions a claimant can still perform.

*Fry v. Comm'r of Soc. Sec.*, No. 11–1192, 2012 WL 1253202, at *3 (6th Cir. Apr. 16, 2012).

Here, the ALJ did not err in relying on Dr. Oestreich's testimony. There is no merit to

Plaintiff's criticism that Dr. Oestreich testified based on the number of positions available

nationally.[7] Rather, as described above, work in the national economy includes jobs available in

the claimant's region or in other regions across the country. Furthermore, Dr. Oestreich did not

limit his testimony to the amount of positions available nationally, as he also gave testimony as

to job availability in central Ohio and statewide. Dr. Oestreich emphasized that his testimony

was consistent with the Dictionary of Occupational Titles and based on the Bureau of Labor

Statistics from the United States Department of Labor. *See* 20 C.F.R. § 404.1566(d) (indicating

that the Commissioner "will take administrative notice of reliable job information available from

various governmental and other publications"). Under these circumstances, the ALJ was entitled

---

[7] The relevant question is whether Plaintiff is able to perform a significant number of jobs in the national economy. To the extent Plaintiff contends that he is entitled to disability due to economic conditions or his inability to obtain work, he is mistaken. *See* 20 C.F.R. § 404.1566(c) (indicating that conditions such as "inability to get work" or "lack of work in your local area" will not entitle a person to a finding of disability).

to rely on Dr. Oestreich's answer to his hypothetical question in determining whether Plaintiff could perform a significant number of jobs.

Plaintiff also misinterprets Dr. Oestreich's answers to his attorney's questioning. Counsel for Plaintiff asked Dr. Oestreich to consider a hypothetical person with various characteristics including the inability to sit for more than two hours in a workday.  Dr. Oestreich found that such a person would be unable to work.  Nevertheless, the hypothetical person Plaintiff's counsel described differed in ability from the RFC the ALJ ultimately assigned to Plaintiff.  Specifically, the ALJ found Plaintiff capable of sitting for six hours in a workday. Accordingly, Dr. Oestreich's answer to counsel's hypothetical does not entitle Plaintiff to a finding of disability.

## C.     Substantial Evidence

Ultimately, the undersigned finds that substantial evidence supports the ALJ's decision. The medical evidence indicates that Plaintiff suffered from various impairments between December 1, 2004 and June 30, 2006.   As the ALJ described, however, the record evidence also indicates that during this period Plaintiff did not seek medical care.  Furthermore, the record contains scant evidence in the form of opinions from medical providers as to Plaintiff's functional capacity during the relevant time frame.

In assigning Plaintiff's RFC, the ALJ concluded that the objective medical evidence did not support Plaintiff's subjective complaints.  Additionally, the ALJ found that Plaintiff's statements as to the severity of his limitations were not entirely credible.  The ALJ stressed that Plaintiff's failure to seek medical care during the relevant time period implies that Plaintiff did not find his impairments to be severe enough to seek treatment.  Additionally, the ALJ noted that

the record suggests Plaintiff was not entirely compliant with his physicians' treatment plans.

Even considering these factors, the ALJ accepted a number of Plaintiff's stated limitations in

assigning Plaintiff's RFC. The ALJ, however, found no support for Plaintiff's statement that he

was only capable of sitting for two hours total in a workday.

In light of the record evidence, the ALJ's RFC assignment and credibility determination

were reasonable. Given the general lack of medical and opinion evidence from the relevant time

period, the ALJ's credibility decision played a crucial role. The undersigned notes an "ALJ's

assessment of credibility is entitled to great weight and deference, since he [or she has] the

opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475

(6th Cir. 2008). Plaintiff's failure to re-establish treatment until July 2006 raises serious

questions as to the severity of his conditions before June 30, 2006, his date last insured.

Additionally, the undersigned agrees with the ALJ that there is little, if any, evidence supporting

Plaintiff's testimony that he was only able to sit for two hours in a workday before his date last

insured. Under these circumstances, the undersigned cannot conclude that the ALJ's RFC and

credibility decisions were outside the allowable zone of choice. *See Blakley*, 581 F.3d at 406

("The substantial-evidence standard . . . presupposes that there is a zone of choice within which

the decisionmakers can go either way, without interference by the courts.") (internal quotations

omitted).

To the extent Plaintiff argues that the ALJ failed to properly develop the record, the

undersigned disagrees.[8] The ALJ certainly has a duty to develop the record and "ensur[e] that

---

[8] Within portions of his briefing, Plaintiff appears to contend that a state agency
physician should have examined him.

15

every claimant receives a full and fair hearing."[9]  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x

181, 189 (6th Cir. 2009) (internal quotations omitted).  Nevertheless, "[t]he burden of providing

a complete record, defined as evidence complete and detailed enough to enable the Secretary to

make a disability determination, rests with the claimant."  *Landsaw v. Sec'y of Health & Human*

*Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *see also Watson v. Astrue*, No. 5:11–cv–00717, 2012

WL 699788, at *5 (N.D. Ohio Mar. 1, 2012) ("If anything, the dearth of opinions cuts in the

Commissioner's favor, as, in the Sixth Circuit, it is well established that . . . the claimant—and

not the ALJ—has the burden to produce evidence in support of a disability claim.")

Additionally, "[a]n ALJ has discretion to determine whether further evidence, such as additional

testing or expert testimony, is necessary."  *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

Here, the ALJ acted within the bounds of his discretion in choosing not to seek any

additional evidence.  Because Plaintiff's medical condition changed significantly in July 2008, it

is unlikely that a consultive examination would have benefitted the ALJ in his analysis.

Additionally, the value of a reviewing physician would have been limited because of the general

lack of medical evidence, caused by Plaintiff's failure to seek medical care, during the relevant

period.  Given the circumstances of this case, and the limited nature of Plaintiff's medical record

prior to his 2008 accident, the ALJ was entitled to rely on his common sense interpretation of the

records, and his evaluation of Plaintiff's credibility, in assigning Plaintiff's RFC.

---

[9]  Under special circumstances, such as when a claimant is unrepresented, the Court
considers this duty "heightened."  *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th
Cir. 2008).  In this case, however, Plaintiff was represented by counsel during the administrative
hearing, and, therefore, the ALJ had no such heightened duty.

**D.      New Evidence**

Finally, the undersigned concludes that Plaintiff does not provide sufficient grounds for a

sentence six remand under 42 U.S.C. § 405(g) for consideration of new evidence.  As detailed

above, Plaintiff attaches new evidence, including medical opinions following the ALJ's July

2009 decision, to his briefing in this matter.  Pursuant to 42 U.S.C. § 405(g), "[t]he court may . . .

remand the case to the Commissioner of Social Security for further action . . . but only upon a

showing that there is new evidence which is material and that there is good cause for failure to

incorporate such evidence in the record in a prior proceeding . . . ."

The new evidence Plaintiff submits is not material to the ALJ's consideration in this case.

To be material, the evidence in question would have to be relevant to Plaintiff's condition after

his alleged onset date, December 1, 2004, but before his date last insured, June 30, 2006.   The

evidence Plaintiff submits addresses his condition after his 2008 motorcycle accident.[10]

Accordingly, Plaintiff fails to satisfy the requirements of 42 U.S.C. § 405(g).

## VIII.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Court **AFFIRM** the decision

of the Commissioner.

## IX.  NOTICE

If any party seeks review by the District Judge of this Report and Recommendation, that

party may, within fourteen (14) days, file and serve on all parties objections to the Report and

---

[10]  Plaintiff also provides evidence regarding hiring practices and the current economic
climate.  For reasons described above, however, such information is not relevant to the
consideration of whether Plaintiff had the capacity to perform a significant number of jobs in the
national economy.

Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: May 30, 2012                                    /s/ *Elizabeth A. Preston Deavers*
                                                      Elizabeth A. Preston Deavers
                                                      United States Magistrate Judge